[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 3, 1992, the plaintiff, Kimchuk, Inc. ("Kimchuk"), filed a three count amended complaint against the defendant, Data Switch Corporation ("Data Switch"), alleging breach of contract and unjust enrichment arising out of the sale of communication switching systems by Kimchuk to Data Switch. Data Switch entered into a contract with the federal government that allowed the government to unilaterally cancel the contract at any convenient time. (Marquis testimony, pp. 76-78.) Data Switch then subcontracted with Kimchuk for the purchase of the switching systems which were integral to the government contract. (Marquis testimony, pp. 76-78.) After the government cancelled the contract with Data Switch, Data Switch in turn cancelled its contract with Kimchuk. (Marquis testimony, pp. 76-78.)
Thereafter, Data Switch instructed Kimchuk to return the goods it had acquired on behalf of Data Switch, pursuant to the contract, to Kimchuk's vendors. (Blasius testimony, p. 43; Marquis testimony, p. 93.) Kimchuk had to negotiate with twenty-nine (29) vendors to comply with Data Switch's request to return the materials. (Marquis testimony, p. 108.) Some of the materials were able to be returned to vendors and some were not. (Plaintiff's Exhibit 17; Marquis testimony, pp. 47-48.) Those that were not were purchased by Data Switch. (Marquis testimony, pp. 93-94.)
Kimchuk alleges that Data Switch agreed to compensate it for the expenses it incurred associated with the return of the materials to the vendors. The first count of Kimchuk's complaint alleges that Data Switch breached its agreements with Kimchuk to compensate Kimchuk for its time expended in returning the goods to its vendors that Kimchuk had ordered on behalf of Data Switch. The second count alleges that Data Switch breached its agreements with Kimchuk by taking a 3 percent discount on invoices paid outside of ten (10) days after receipt, where the agreement allegedly called for a 3 percent discount if the invoice was paid CT Page 6919 within ten (10) days, and net thirty (30) days. The third count alleges that Data Switch was unjustly enriched at the expense of Kimchuk since Kimchuk exerted efforts to return the goods to the vendors at the request of Data Switch.
The parties agree that this transaction is controlled by Article 2 of the Uniform Commercial Code, General Statutes, Sec.42a-2-101 et seq. (Plaintiff's Trial Brief, p. 11; Defendant's Supplemental Trial Brief, p. 17.)
The court finds that the contract between the parties is memorialized in plaintiff's Exhibit 4, the November 6, 1989 letter from James A. Marquis, Vice President of Kimchuk, to Bill Blasius of Data Switch. See General Statutes, Sec. "42a-2-201(2) (a contract for sale is evidenced" [b]etween merchants if within a "reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received"). The court finds that plaintiff's Exhibit 4 is a confirmatory memorandum that Data Switch failed to object to at any time after its receipt. (Marquis testimony, p. 31.) Further, with respect to the terms required to be contained in the memorandum, the Uniform Commercial Code comment to section 42a-2-201
indicates that "[t]he required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated." Additional price and quantity terms were in fact provided by Kimchuk to Data Switch in late December, 1989, to supplement the information contained in the November 6, 1989 letter. (Plaintiff's Exhibit 7.)
Exhibit 4 states that "[i]n the event that the above scheduled [orders by Data Switch] are postponed, due to Data Switch re-scheduling, Data Switch agrees to compensate Kimchuk, Inc. for any expenses incurred in procuring the material and any commitments that Kimchuk, Inc. made for material on behalf of Data Switch." Further, Ms. Simon, a Kimchuk employee, testified that during the negotiations between the parties over the return of the goods to vendors and others, Blasius offered to cover the costs incurred by Kimchuk associated with the cancellation of the contract. (Simon testimony, pp. 6, 8.) The court finds that Data Switch has breached the contracts and agreements between the parties by not making any payments toward the procurement of materials or toward commitments made by Kimchuk, Inc. on behalf CT Page 6920 of Data Switch. Further, Blasius indicated that it was the intent of Data Switch throughout this matter to compensate Kimchuk. (Blasius testimony, p. 43.)
The total value of the material obtained by Kimchuk on behalf of Data Switch that was returned or sent to Data Switch was $223,379.25.[1] (Plaintiff's Exhibit 20; Marquis testimony, p. 54.) As part of the procurement expense, the court finds that' Kimchuk was required to pay a financing charge on that amount. (Plaintiff's Exhibit 20; Marquis testimony, pp. 54-55.) In fact, Kimchuk exhausted its line of credit during the time of the ongoing dispute in this matter. (Cipriano testimony, p. 42.) Pursuant to the contract and the agreements of the parties, Kimchuk was entitled to a reasonable procurement expense of 5 percent for the goods acquired on behalf of Data Switch, or $11,168.96.
With respect to the return of the goods by Kimchuk to the vendors, pursuant to General Statutes, Sec. 42a-2-710, Kimchuk may recover incidental damages as a result of Data Switch's breach of its oral and written agreements with Kimchuk. "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods the after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."
Data Switch offered to pay 1 to 2 percent for storage of the goods subsequent to its cancellation of the contract. (Plaintiff's Exhibit 15; Blasius testimony, p. 48; Marquis testimony, p. 37.) In January, Data Switch instructed Kimchuk to hold the goods and, thereafter, Data Switch waited until March to instruct Kimchuk to return the goods to the vendors. (Blasius testimony, p. 43.) The court finds that the incidental damages associated with the storage of the goods are recoverable under section 42a-2-710. Exhibit 17-6 indicates that Kimchuk returned $117,311.97 worth of material to its vendors. (Marquis testimony, pp. 47-48.) Further, there was an additional $24,013.91 worth of material that Kimchuk had to store as a result of the vendors refusal to accept its return of the material. (Exhibit 17-5; Marquis testimony, pp. 47-49.) Therefore, the reasonable storage charge on $141,325.88, that Data Switch unilaterally offered to pay and that is independently recoverable under section 42a-2-710, at 2 percent, totals $2,826.52. CT Page 6921
With respect to the return of the goods, section 42a-2-710
provides that reasonable charges associated therewith are recoverable. As established on plaintiff's Exhibit 2, the court finds that $579.20 for the shipping charges and $2,637.60 for the stockroom charges are reasonable incidental damages in light of the amount of material that Data Switch required Kimchuk to return. (Simon testimony, p. 9.)
Lastly, Kimchuk argues that it should be compensated for the allegedly unauthorized 3 percent discounts taken by Data Switch. Plaintiff's Exhibit 4 provides that "[f]inal pricing for the above cannot be determined until procurement has been completed. Kimchuk, Inc. will offer Data Switch a 3% discount for payment in 10 days and it is anticipated and expected that Data Switch will take advantage of said discount." The court finds that on two occasions Data Switch took 3 percent discounts outside the ten (10) day time period in violation of the contract. (Whittle testimony, p. 32; Plaintiff's Exhibit 20.). The value of the two discounts taken totals $13,085.26. The court finds that the issues surrounding the 3 percent discounts were continually in dispute and, as a result, Kimchuk did not waive its right to enforce the discount terms. (Cipriano testimony, p. 32.) The court finds that the full amount of $13,085.26 is recoverable under the November 6, 1989 letter memorializing the parties' agreement.
To summarize, the court awards Kimchuk $11,168.96 for procurement expenses pursuant to plaintiff's Exhibit 4; $2,346.24 for storage expenses on the materials returned by Kimchuk; $480.28 for storage expenses on the materials that the vendors would not accept for return under General Statutes, Sec. 42a-2-710; $3,216.80 for shipping expenses pursuant to section 42a-2-710; and $13,085.26 for the 3 percent discount that was improperly taken by Data Switch in violation of the parties' agreement. (Plaintiff's Exhibit 4.) These damage items together total $30,297.54.
Based on the foregoing, the court finds that Kimchuk sustained damages in the amount of $30,297.54 as a proximate result of Data Switch's breach of contract. Judgment is entered in favor of the plaintiff and against the defendant for $30,297.54.
Riefberg, J. CT Page 6922